IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY MARK CLARK,<br><br>Petitioner,<br><br>v.<br><br>JENNIE JOBE,<br><br>Respondent. | )<br>)<br>)   NO. 3:08-0115<br>)   JUDGE HAYNES<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM

Petitioner, Anthony Mark Clark, filed this pro se action under 28 U.S.C. § 2254 seeking the writ of habeas corpus to set aside his state convictions for aggravated sexual battery and unlawful photography[1] for which Petitioner received an effective twelve-year sentence. After a review of the petition, the Court appointed the Federal Public Defender to represent Petitioner and an amended petition was filed.[2] Petitioner's amended petition asserts the following claims: (1) ineffective assistance of counsel; (2) an involuntary guilty plea based upon counsel's ineffectiveness; (3) illegal enhancement of his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004); (4) denial of due process for lack of notice of enhancement; and (5) actual innocence.

### A. Procedural History

---

[1] Petitioner does not contest the conviction for unlawful photography. (Docket Entry No. 1 at 6, 8).

[2] The Federal Rules of Civil Procedure can apply in a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supercedes the prior complaint. Clark v. Tarrant County, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the amended petition to supercede the pro se petition. In a footnote, the amended petition incorporates by reference the claims in the pro se petition, but none of those claims are supported by analysis and precedent. Thus, those claims are not considered by the Court.

1

Petitioner was originally charged with three counts of rape of a child and two counts of unlawful photographing in violation of privacy. Petitioner later entered into a plea bargain agreement to plead guilty to one count of aggravated sexual battery and one count of unlawful photographing for concurrent sentences of twelve years for aggravated sexual battery and eleven months, twenty-nine days for unlawful photographing. Anthony Clark v. State, No. M2006-01176-CCA-R3-PC, 2007 WL 2295583, at *1 (Tenn. Ct. Crim. App. August 6, 2007) (perm. app. denied December 17, 2007). Plaintiff did not appeal his conviction in any direct appeal. On November 8, 2004, Petitioner filed a state post-conviction petition with claims of ineffective assistance of counsel and an involuntary guilty plea. After an evidentiary hearing, the state trial court denied the petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. Id. The Tennessee Supreme Court denied Petitioner's application for permission to appeal on December 17, 2007 and its mandate issued on January 7, 2008. Id.

## B. Review of the State Record

As to the facts[3] underlying Petitioner's convictions in the state post-conviction appeal, on his post-conviction appeal, the Tennessee Court of Criminal Appeals found as follows:

> The victim testified that she was twelve years old and that, during the time period these crimes occurred, her family was temporarily staying with the Appellant and his family. On the evening of January 11, 2003, after the Appellant's wife had gone upstairs to bed, the Appellant came downstairs and tried to pull up the victim's shirt and said "Let me see your breasts." The victim said "no," and the Appellant went back upstairs. The victim then went to sleep on the couch.
>
> The victim testified that she later awoke to find that the Appellant had pulled down her pajama bottoms and underwear and "[h]e started to finger me.... He stuck his finger in my vagina and my butt." Subsequently, the Appellant went to another room and obtained a camera. When he returned, he "tried to pull up [her]

---

[3] State appellate court opinion findings can constitute factual findings in a habeas action. Sumner v. Mata, 449 U.S. 539, 546-47 (1981), and have a statutory presumption of correctness. 28 U.S.C. § 2254(e).

2

shirt and take a picture." The victim knocked the camera out of the Appellant's hand, and he again returned upstairs.

The victim related that after the incident she went back to sleep, but the Appellant returned a third time and again pulled down her pajama bottoms. According to the victim, the Appellant was wearing his robe, and he kneeled beside the couch and "put[ ] his hand in [her] underwear.... He fingered [her] in [her] vagina."

Detective Bailey, who questioned the Appellant about the alleged rapes, testified that the Appellant confirmed that he had gone upstairs and came downstairs three times; that he was wearing a robe; and that he had a camera and attempted to photograph the victim. Bailey also testified that he executed a search warrant of the Appellant's residence and found two videotapes. One segment on the videotape was date-stamped November 30 and depicted the victim, as filmed through a keyhole in the downstairs bathroom, and showed her breasts. Bailey stated that the next segment on the videotape was date-stamped December 3 and showed the victim using the bathroom and undressing before stepping into the shower. Detective Bailey testified that the Appellant admitted to videotaping the victim through a keyhole in the bathroom door. He further testified that the Appellant stated that he removed the bathroom door while taping the second segment so he could get a clearer picture of the victim. According to Bailey, the Appellant also admitted that he had hidden the camera in a gym bag or laundry basket and that he wanted to film the victim in the nude because he was a voyeur.

Clark, 2007 WL 229583, at *1.

In his post-conviction proceedings, the Tennessee appellate court made the following findings of fact on Petitioner's claims in this action about the ineffectiveness of his trial counsel:

### a. Failure to Interview Possible Defense Witnesses

As his first factual basis for ineffective assistance of counsel, the Appellant argues that trial counsel failed to interview Brian and Carrie Faulkner, possible defense witnesses who could have impeached the victim's credibility. According to the Appellant, trial counsel was aware that the Faulkners could testify to the victim's varying accounts of her encounters with the Appellant. The Appellant asserts that the victim's conflicting statements effectively amounted to a recantation of her rape allegations because, in one version, she stated only that the Appellant tried to lift her shirt and take a picture.

Trial counsel acknowledged that he did not interview the Faulkners. However, he testified that the Appellant gave him a diskette and a printout of information about possible defense witnesses, including the Faulkners, and that he had reviewed the information with the Appellant. Trial counsel further stated that, when he

3

reviewed the discovery with the Appellant, they specifically discussed the victim's statements and "challenges that could be made to her credibility."

In denying relief, the post-conviction court found that the Faulkners' testimony would not have impeached the victim's testimony, concluding that the victim's various statements described the different manners in which the Appellant committed the rapes on the three separate occasions he came downstairs. The post-conviction court specifically concluded that "[t]his is a child victim who never deviated from stating that she had been violated."

\* \* \*

### b. Failure to Investigate and Utilize Medical Report from Waller Case

Next, the Appellant asserts that trial counsel was ineffective because he failed to investigate a separate case in which the victim alleged that Kaleb Waller had sexually assaulted her only a few weeks prior to the Appellant's assault of the victim. The Appellant contends that trial counsel failed to examine and obtain information from the court file, namely the State's discovery response, and that trial counsel's decision not to use the information contained in the file as impeachment evidence resulted in his performance being below the standard of competence demanded of attorneys in criminal cases. The Appellant further asserts that trial counsel never consulted with him in regard to the sexual examination performed on the victim in the Waller case. According to the Appellant, he was unaware that the results of the examination indicated that the examiner found no conclusive evidence of trauma from digital penetration until after his plea was entered. He asserts, based upon the information contained in the report, that there is a reasonable probability that a jury would have concluded that he did not digitally penetrate the victim since there was no physical evidence of penetration.

In contrast, trial counsel testified that he did contact the Davidson County detective in charge of the Waller case. Counsel learned that, based on the victim's allegations against him, Waller was charged and pled guilty to rape of a child, aggravated sexual battery, and other sex offenses, after he confessed to digitally penetrating the victim and fondling her breasts. Trial counsel further testified that he had reviewed the report from Our Kids Center but did not think it was persuasive in refuting the victim's allegations.

\* \* \*

### c. Failure to Retain Professional Services

The Appellant further asserts that trial counsel was deficient based upon his failure to employ expert services in investigating the case. In fact, the Appellant testified that trial counsel discouraged him from employing a private investigator

4

because trial counsel did not think one was necessary. Nonetheless, the Appellant testified that he had "hired several private investigators" in preparation for the post-conviction hearing.

* * *

The Appellant also asserts that trial counsel did not consult with him about hiring a pediatrician as a defense witness "to support [the Appellant's] position that he was not guilty." The Appellant asserts that he "was ready to put a defense team together and his trial counsel failed to assist[, thus,] denying [the Appellant] effective assistance of counsel." The Appellant's allegation implies that he would have retained an expert witness if trial counsel had discussed the possibility with him. However, if a petitioner seeks to establish deficient performance based upon trial counsel's failure to employ an expert witness, then it is incumbent upon the petitioner to call a witness at the post-conviction hearing to establish that the witness's testimony would have benefitted the petitioner and that prejudice has resulted. Id. at 757. The Appellant did not do so, thus, he has failed to demonstrate that he could have found a pediatrician who would have testified that the medical evidence indicated he did not digitally penetrate the victim. No relief is warranted.

* * *

In denying relief, the post-conviction court made the following findings:

In this case, the State had a credible young victim. There was corroboration of her testimony by physical evidence and the Appellant's own statements.

The Appellant asserts that "[i]f trial counsel had done the investigation to ascertain the defense proof and consulted with [his] client on trial strategy, [the Appellant] would not have plead[ed] guilty to charges he did not commit and would have proceeded, as he always intended, to trial by jury." The Appellant stated that "he lost all hope in his trial lawyers because they had not conducted any investigation and were unprepared to try the case" and that he was "almost forced, like [he] was under duress to take the [plea bargain]...."

The Court finds that [the Appellant] met with his attorneys on many occasions, that he was shown the discovery material, that there was discussion of the motions which were being filed, that he knew ... his counsel was prepared and ready to go to trial if [the Appellant] had not decided to accept the State's offer. The [Appellant's] exposure had he been convicted on all counts was seventy-five (75) years on the A felonies.... In light of the apparent strength of the State's case, his twelve (12) year at 100% sentence seems eminently fair and one for which he should be grateful.

5

> The Court finds that [Appellant's] counsel was effective, prepared, had investigated the facts of the case, had filed appropriate motions and zealously represented [his] client.
>
> Trial counsel testified that he investigated the leads the Appellant gave him and that he discussed the victim's prior misstatements and possible impeachment evidence with the Appellant. Trial counsel further testified that he advised the Appellant that the State had a compelling case. The evidence established that Appellant had secretly videotaped the twelve-year-old victim so he could view the private areas of her body. Further, the Appellant admitted to Detective Bailey that he had videotaped the victim because he was a voyeur. Clearly, this conduct would have been damaging to the Appellant's defense. Moreover, the victim's account of the sexual assault was corroborated by the Appellant's admission that he came downstairs three times during the night and that he had a camera and wanted to take a picture of the victim.

Clark, 2007 WL 2295583, at *7, 8, 9, 10. The state appellate court's other findings and rulings are presented in the context of Petitioner's claims.

### C. Conclusions of Law

Petitioner's claims are governed by the provisions of the antiterrorism and effective death penalty act of 1996 ("ADEPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the ADEPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the supreme court of the united states; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable

6

facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. Id. The Supreme Court interpreted the language "clearly established federal law, as determined by the supreme court of the united states" as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. Id. at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time the petitioner's state court conviction became final." Id. at 390; accord Joshua v. Dewitt, 341 F.3d 430, 436 (6th Cir. 2003). In Bell v. Cone, 535 U.S. 685, 693 (2002), the court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decision but unreasonably applies [that principle] to the facts of the particular case." Id. at 694. The district court "must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added).

The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

### 1. Ineffective Assistance of Counsel Claims

Clark argues that his trial counsel was ineffective for failing to investigate or inform Clark of his lack of investigation and failure to consult adequately with Petitioner. In the state post-conviction appeal, the Tennessee appellate court made the following rulings findings on these claims.

#### a. Failure to Interview Possible Defense Witnesses

\* \* \*

> While we agree that the failure to interview witnesses may constitute deficient performance in some cases, in this case we conclude that trial counsel could reasonably rely on his client's summary of the Faulkners' potential testimony in deciding whether to conduct further investigation and interview them personally. Thus, after *de novo* review, accompanied by a presumption of correctness, we conclude that the evidence does not preponderate against the court's findings on this issue.

#### b. Failure to Investigate and Utilize Medical Report from Waller Case

\* \* \*

> The post-conviction court found that trial counsel appropriately investigated the Waller case and concluded that the "Appellant's attorneys obtained the court file, ascertained that the Defendant in the case confessed to the molestation and the case was disposed [of.]" After *de novo* review, we conclude that the record supports the post-conviction court's findings on this issue.

#### c. Failure to Retain Professional Services

8

* * *

With regard to this issue, the post-conviction court found that trial "[c]ounsel did not think that [hiring a private investigator] would be helpful to the defense of the case. These rape events occurred in the course of one evening and the only people present were the [Appellant] and victim. The Court does not see how a private investigator would have been helpful." The sparse proof in the record with regard to this factual claim does not preponderate against this finding.

The Appellant also asserts that trial counsel did not consult with him about hiring a pediatrician as a defense witness "to support [the Appellant's] position that he was not guilty." The Appellant asserts that he "was ready to put a defense team together and his trial counsel failed to assist[, thus,] denying [the Appellant] effective assistance of counsel." The Appellant's allegation implies that he would have retained an expert witness if trial counsel had discussed the possibility with him. However, if a petitioner seeks to establish deficient performance based upon trial counsel's failure to employ an expert witness, then it is incumbent upon the petitioner to call a witness at the post-conviction hearing to establish that the witness's testimony would have benefitted the petitioner and that prejudice has resulted. Id. at 757. The Appellant did not do so, thus, he has failed to demonstrate that he could have found a pediatrician who would have testified that the medical evidence indicated he did not digitally penetrate the victim. No relief is warranted.

Clark, 2007 WL 2295583, at *8, 9.

Albeit in the context of Plaintiff's claim of an involuntary guilty plea, the Tennessee appellate court also found:

> The Appellant asserts that "[i]f trial counsel had done the investigation to ascertain the defense proof and consulted with [his] client on trial strategy, [the Appellant] would not have plead[ed] guilty to charges he did not commit and would have proceeded, as he always intended, to trial by jury." The Appellant stated that "he lost all hope in his trial lawyers because they had not conducted any investigation and were unprepared to try the case" and that he was "almost forced, like [he] was under duress to take the [plea bargain]...."
>
> In denying relief, the post-conviction court made the following findings:
>
> In this case, the State had a credible young victim. There was corroboration of her testimony by physical evidence and the Appellant's own statements.
>
> The Appellant asserts that "[i]f trial counsel had done the investigation to ascertain the defense proof and consulted with [his] client on trial strategy, [the

Appellant] would not have plead[ed] guilty to charges he did not commit and would have proceeded, as he always intended, to trial by jury." The Appellant stated that "he lost all hope in his trial lawyers because they had not conducted any investigation and were unprepared to try the case" and that he was "almost forced, like [he] was under duress to take the [plea bargain]...."

The Court finds that [the Appellant] met with his attorneys on many occasions, that he was shown the discovery material, that there was discussion of the motions which were being filed, that he knew ... his counsel was prepared and ready to go to trial if [the Appellant] had not decided to accept the State's offer. The [Appellant's] exposure had he been convicted on all counts was seventy-five (75) years on the A felonies.... In light of the apparent strength of the State's case, his twelve (12) year at 100% sentence seems eminently fair and one for which he should be grateful.

The Court finds that [Appellant's] counsel was effective, prepared, had investigated the facts of the case, had filed appropriate motions and zealously represented [his] client.

Trial counsel testified that he investigated the leads the Appellant gave him and that he discussed the victim's prior misstatements and possible impeachment evidence with the Appellant. Trial counsel further testified that he advised the Appellant that the State had a compelling case. The evidence established that Appellant had secretly videotaped the twelve-year-old victim so he could view the private areas of her body. Further, the Appellant admitted to Detective Bailey that he had videotaped the victim because he was a voyeur. Clearly, this conduct would have been damaging to the Appellant's defense. Moreover, the victim's account of the sexual assault was corroborated by the Appellant's admission that he came downstairs three times during the night and that he had a camera and wanted to take a picture of the victim.

We have conducted a *de novo* review of the post-conviction court's findings, accompanied by a presumption of correctness, and conclude that the evidence does not preponderate against the court's findings.

Clark, 2007 WL 2295583, at *9-10.

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Where the ineffective assistance of counsel claim involves a guilty plea, Petitioner must present proof that but for his counsel's acts or omissions and under all of the circumstances, he would not have pled guilty and would have insisted upon a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This assessment includes whether any "affirmative defense likely would have

succeeded at trial," id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003), and whether any cited evidence "likely would have changed the outcome of the trial." Hill, 474 U.S. at 59; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006).

Here, given Petitioner's admissions to the investigation officer that he made three sexual visits with the child victim, the undisputed evidence of unlawful photograph, the potential sentences and the absence of any proof of actual prejudice, the Court concludes that the state courts' rulings on Plaintiff's ineffective assistance of counsel claims are not unreasonable.

## 2. Involuntary Guilty Plea

Based upon his counsel's alleged ineffectiveness, Petitioner contends that his guilty plea was unknowingly and voluntarily. The Tennessee Court of Criminal Appeals addressed this claim with the findings and conclusions quoted supra. Clark, 2007 WL 2295583, at *9, 10.

A plea of guilty is valid if entered voluntarily, knowingly and intelligently, and its validity is determined under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 748-49 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). The Constitution requires that a defendant be informed of the direct consequences of his plea. Brady, 397 U.S. at 755. While the maximum possible sentence is one such consequence, Riggins v. McMackin, 935 F.2d 790, 796 (6th Cir. 1991), eligibility for parole is not, Brown v. Parana, 718 F.2d 784, 788 (6th Cir. 1983); Armstrong v. Egeler, 563 F.2d 796, 800 (6th Cir. 1977), nor is knowing whether the sentence is to run consecutive or concurrent to a state sentence. United States v. Ferguson, 918 F.2d 627, 630-31 (6th Cir. 1990).

A defendant's solemn declaration of guilt carries a presumption of truthfulness. Blackledge v. Allison, 431 U.S. 63, 74 (1977); Henderson v. Morgan, 426 U.S. 637, 648 (1976) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). If a plea bargain is struck, the

13

defendant should be held to the terms of the plea bargain and not be heard to complain that the bargain was other than what he openly and unequivocally declared in open court. Mabry v. Johnson, 467 U.S. 504, 510 (1984).

Given the Petitioner's solemn admission of his guilt and the state court's findings trhat his counsel provided reasonably effective assistance, the Court concludes that the state appellate court's determination of this claim is reasonable.

### 3. Apprendi and Blakely Claims

As to his sentencing enhancement claim, Petitioner asserts that judicial fact-finding occurred at his guilty plea hearing, in violation of Blakely. However, Blakely had not yet been decided when Petitioner was sentenced on November 10, 2003, and Blakely does not apply retroactively. Arias v. Hudson, 589 F.3d 315, 318 (6th Cir. 2009). With Petitioner's November 2003 guilty plea, Petitioner's proceedings had ended when Blakely was issued on June 24, 2004. Thus, Blakely does not apply to his petition and this claim is without merit.

Moreover, Apprendi is inapplicable to collateral review petitions. Goode v. United States, 305 F.3d 378, 382 (6th Cir. 2002). In any event, with the guilty plea as the basis of his conviction, Blakely is an inapplicable finding. Kelley v. Brunsman, 625 F. Supp. 2d 586, 603-04 (S.D. Ohio 2009).

### 4. Due Process Claim

Petitioner's due process claim is that the State violated Tenn. Code Ann. § 40-35-202(b)(1) in failing to provide him a statement of enhancement factors prior to sentencing. This claim was not raised in state court and is procedurally defaulted. Absent unusual or exceptional circumstances, a district court should dismiss a petition with unexhausted claims as a matter of comity to give the state courts an initial opportunity to pass on and correct alleged violations of

its prisoner's federal rights. Wilwording v. Swenson, 404 U.S. 249 (1971). With Tennessee's one-petition rule and one-petition rule and one-year limitations period of Tenn. Code Ann. § 40-35-102, this claim is procedurally defaulted, Coleman v. Thompson, 501 U.S. 722, 752 (1991), and Petitioner has not shown cause or prejudice for that default.

### 5. Actual Innocence

Petitioner asserts that he is actually innocent of the rape. However, actual innocence claims are not cognizable in a non-capital proceeding. Herrera v. Collins, 506 U.S. 390, 404 (1993); Cress v. Palmer, 484 F.3d 844, 854 (6th Cir. 2007).

For these reasons, the Court concludes that petition should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the _17th_ day of December, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge